ESTATE OF EDOUARD H. PAQUETTE, DECEASED, BY TRUST GENERAL DU CANADA, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Paquette v. Commissioner
Docket No. 7375-79.
United States Tax Court
T.C. Memo 1983-571; 1983 Tax Ct. Memo LEXIS 216; 46 T.C.M. (CCH) 1400; T.C.M. (RIA) 83571; September 15, 1983. Herbert Awe,John M. Skilling,Robert Carney, and James C. Warner, for the petitioner. Jerome Sekula, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in decedent's Federal estate tax in the amount of $164,811.68. The sole issue for decision is whether the decedent was a resident of the United States under the estate tax provisions *217 at the time of his death. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Edouard H. Paquette (hereinafter decedent) died on January 21, 1975, at the age of 77 in Orlando, Florida. He died testate with a will executed in Canada. The executor of decedent's estate is the Trust General du Canada (sometimes referred to as petitioner), a Canadian corporation, existing and operating under the laws of Canada. The executor filed a nonresident alien estate tax return (Form 706 NA) with the Philadelphia Service Center on May 2, 1976. Decedent was born in Quebec, Canada, on July 13, 1897, and throughout his entire life and at the time of his death he was a citizen of Canada. He was married in Montreal, Canada. His widow, Marie-Ange Paquette, (hereinafter Mrs. Paquette) is also a Canadian citizen. Beginning sometime prior to 1950, decedent owned and operated two retail hosiery stores in Montreal. He also owned two houses in Canada, one located at 2600 St. Catherine Road in Montreal (hereinafter referred to as the "city house") and the other, a large house situated on two acres of land, located at 1792 Boulevard Mattawa in Laval (hereinafter *218 referred to as the "country house"). The city house was conveniently located near the decedent's two retail outlets. Commencing no later than 1950 up to the year of his death, decedent made yearly trips to Florida. He generally visited Florida in the winter months, from October through April, and then returned to Canada for the summer. On November 11, 1955, decedent retired and sold his retail hosiery business, and he sold the city house on June 18, 1956. Following the sale of the city house, decedent, while in Florida for the winter, purchased a house in Orlando, Florida (hereinafter sometimes referred to as the Florida house) on March 5, 1957. Decedent furnished his Florida house with the contents of the recently sold city house. Decedent filed a "Declaration of Domicile and Citizenship" with the State of Florida on March 22, 1957, but then filed a "Revocation of Declaration of Domicile and Citizenship" with that state on February 13, 1958. [1]
*219 During the period from 1957 through 1971, decedent and his wife continued to spend the winter months in Florida. They returned to their country house in Canada for the remaining portion of the year, generally from April through October. During 1971, decedent's wife became ill and underwent a throat operation, and she also began to experience difficulty walking that year. After 1971, she no longer accompanied decedent on his trips to Canada because of her inability to move about comfortably. Decedent, however, continued to return on Montreal every summer through 1974. On September 23, 1971, decedent sold the country house because it was too big and required too much work. Following the sale of the country house, decedent intended to buy a small house or rent an apartment in Montreal, and he discussed his intention with Jacques Bourgeois (hereinafter Mr. Bourgeois), his accountant and financial advisor. During the spring of 1972, decedent developed skin cancer on his left hand. In June of that year, he was hospitalized in Florida for surgery on that hand and he was again hospitalized in Florida the next month for a second operation on the same hand. In November of 1972, *220 decedent returned to Montreal. While in Canada, he met with his investment portfolio manager at Trust General of Canada, Andre Larouche (hereinafter Mr. Larouche), and at that time he also met with Mr. Bourgeois, and various friends. During February of 1973, decedent was again hospitalized in Florida for an operation to remove a cancerous tumor on his left lung. After recovery from this operation in May of 1973, he returned to Canada for at least two months. While in Canada, decedent again discussed his intention to buy or rent an apartment in Canada with Mr. Bourgeois. He also met with Mr. Larouche and various friends. During February of 1974, decedent was hospitalized in Florida for an operation to remove a cancerous tumor on his right lung. He was discharged from the hospital in March and returned to Canada for the summer of 1974. Decedent was thin and weak; nonetheless, he met with Mr. Bourgeois and reiterated his intention to buy or rent an apartment in Montreal. As usual, he consulted with Mr. Larouche and visited friends. On July 19, 1974, decedent executed his last will and testament while in Montreal, and stated therein that he was a resident of Montreal. Also, *221 in August 1974, he was admitted into a Montreal hospital for the purpose of checking the condition of his lungs. Decedent visited Orlando, Florida, in November of 1974, where he resided until he died on January 21, 1975. At all times mentioned herein and up until the date of his death, decedent filed all of his income tax returns in Canada; maintained a valid Canadian driver's license; a valid Canadian passport; voted in Canada; and he purchased, registered, and insured his automobile in Canada. Decedent never applied for a Florida driver's license, nor did he apply for naturalization as a citizen of the United States. In addition to the above contacts which decedent maintained with his native country, the situs of the bulk of decedent's assets were located in Canada, and were either deposited in Canadian banks or invested in stocks and bonds of Canadian corporations. [2] His accountant, Mr. Bourgeois and his investment manager, Mr. Larouche, both resided in Canada. Decedent met with Mr. Bourgeois yearly from 1968 through 1974 to discuss his investments and prepare his tax returns. During the period from 1971 through 1975, decedent met with Mr. Larouche twice a year concerning *222 possible changes in his investment portfolio. Decedent actively managed his investments while in Canada. Decedent was a very conservative man, and Mr. Larouche was prohibited from making changes in his portfolio unless he received in person authorization from decedent. ULTIMATE FINDING OF FACT Decedent was domiciled in Canada on the date of his death. OPINION We must determine whether decedent was a resident of the United States within the meaning of the estate tax statutes at the time of his death. Both parties are in agreement that a "resident" under the applicable estate tax provisions means "domiciliary." Petitioner argues that, while decedent did own a house in Florida and resided there in the winter, he lacked the intent necessary to acquire a new domicile in the United States. Respondent, on the *223 other hand, maintains that decedent established a domicile in Orlando, Florida, during either 1957 or 1971. Alternatively, respondent contends that in the event we find that decedent was domiciled in Canada at the time of his death, the value of decedent's automobile, physically located within the United States at such time, is properly includable in decedent's gross estate. Section 2001[3] imposes a transfer tax on the taxable estate of every decedent who is a citizen or resident of the United States. Section 20.0-1(b)(1), Estate Tax Regs., provides in pertinent part that: A "resident" decedent is a decedent who, at the time of his death, had his domicile in the United States. * * * A person acquires a domicile in a place by living there, for even a brief period of time, with no definite present intention of later removing therefrom. Residence without the requisite intention to remain indefinitely will not suffice to constitute domicile * * *.[Emphasis added.] Thus to be a resident for estate tax purposes, decedent must have been domiciled in the United States at the time of *224 his death. We start with the fundamental principle that a domicile once acquired is presumed to continue until it is shown to have been changed. Estate of Jan Willem Nienhuys v. Commissioner,17 T.C. 1149, 1159 (1952), citing Mitchell v. United States, 88 U.S. (Wall.) 350 (1874). There is no question about decedent having been domiciled in Canada prior to 1957, the year in which he purchased a home in Orlando, Florida.We must examine the facts to determine whether after 1957, events occurred which would overcome that presumption. To establish a new domicile two things are indispensable: first, decedent must have resided in the United States, and second, he must have intended to remain here indefinitely. Both elements must be present, and one without the other is insufficient to establish a new domicile. Mitchell v. United States,supra;F. Giacomo Fara Forni v. Commissioner,22 T.C. 975 (1954); Estate of Jan Willem Nienhuys v. Commissioner,supra; *225 sec. 20.0-1(b)(1), Estate Tax Regs. Respondent in support of his first position that decedent established a domicile in Florida during 1957, relies on the fact that decedent retired and sold his business in Canada in 1955; he sold his city house during 1956; and decedent purchased a home in Orlando, Florida, during March 1957. Petitioner, however, argues that the home which decedent purchased in Florida during 1957, was merely a vacation home, for the purpose of continuing his usual practice of spending the winter in Florida's warm climate. For the reasons set forth below, we agree with petitioner. On November 11, 1955, decedent sold his business and retired. As he no longer required a house near his retail stores, he sold the city house during June 1956. On March 5, 1957, decedent, while vacationing in Florida, purchased a house there in Orlando. Respondent, on brief, places substantial weight on the fact that decedent furnished his Florida house with the contents of his recently sold city house. He maintains that this is strong evidence of decedent's intent to acquire a new domicile in Florida during 1957. Upon considering all the circumstances in this case, we disagree *226 with respondent's claim that the movement of furniture from the city house to Florida is strong evidence of decedent's intent to acquire a United States domicile. We find nothing unusual in decedent furnishing his newly purchased home with furniture from his recently sold home. Decedent, after all, still maintained his country home, which was a large fully furnished home in Laval, Canada, to which decedent returned every April for the summer. Furthermore, the duration of decedent's stay in Florida did not increase upon purchase of the Florida house. Their long and consistent practice of spending winter months in Florida and returning to Canada in the summer, continued uninterrupted from 1950 until 1971. Respondent also points to the "Declaration of Domicile and Citizenship" filed by decedent on March 27, 1957, as additional support for his position. While our determination of decedent's domicile must be based on all of the relevant facts and circumstances, we fail to see how respondent can point to that declaration without giving at least equal weight to decedent's express revocation of that declaration, filed on February 13, 1958, in which decedent stated that he intended to *227 retain his Canadian domicile.[4]
After careful consideration of the entire record, we conclude that decedent was domiciled in Canada prior to 1957, and that his status as such did not change, as respondent has argued, during 1957 when he purchased a home in Orlando, Florida. We now address respondent's alternative position that decedent acquired a United States domicile in 1971 after the sale of his country home. Respondent maintains that, after the sale of decedent's country house in Canada, Florida was the only place where he owned a home and, therefore, Florida became his domicile. We disagree. While we agree with respondent that ownership of a home can be some indication of an individual's intent to establish a new domicile, it is merely one of several factors which must be examined to ascertain decedent's intent. In determining decedent's intent, we have evaluated all of the evidence and we are convinced that decedent's failure to own a home in Canada after 1971 was due to his medical problems rather than an intent to change his domicile to the United States. After the sale of his Canadian country house, decedent informed Mr. Bourgois that *228 he intended to purchase or rent a small residence in Montreal to replace that house as soon as he returned to Canada in the spring of 1972. Unfortunately, decedent's health began to decline in 1972 until the date of his death. In 1972 he had two operations on his hand for skin cancer; one in June, the second in July. Notwithstanding his medical problems, decedent returned to Canada in November of that year. While in Canada he visited friends [5] and conducted business. He met with Mr. Larouche and Mr. Bourgois with whom he discussed his investments and reiterated his present intent to locate an apartment in Montreal when his health improved. Decedent's health, however, continued to decline, and in February 1973, he underwent major surgery to remove a cancerous tumor from his left lung. Obviously weakened from the operation, he returned to Canada in May for two months, during which period he again visited friends and managed his financial affairs, and met with both Mr. Larouche and Mr. Bourgois. Again, *229 he informed Mr. Bourgois that he still intended to find an apartment in Montreal when his health improved. Unfortunately, decedent's health continued to worsen and, during February 1974, he underwent surgery to remove a second cancerous tumor, this time from his right lung. Although in failing health, decedent returned to Canada for the summer of 1974. Following his usual practice, he met with Mr. Larouche to discuss and manage his investments. He also met with Mr. Bourgois and restated his intent to buy or rent an apartment as soon as he was able to do so. While in Canada, decedent executed his last will and testament in July of 1974, and he stated therein that he was a resident of Montreal. In addition to his yearly visits to Canada, decedent maintained numerous contacts with his country of citizenship which evidenced his intention to retain his Canadian domicile. Up until the date of his death, he filed income tax returns in Canada, he voted in Canada, and he maintained a valid Canadian driver's license as well as a valid Canadian passport. In addition, decedent's automobile was purchased, registered, and insured in Canada. Morever, it is not without significance that most *230 of decedent's assets, valued at $556,351.76, were located in Canada. [6] He met with Mr. Larouche and Mr. Bourgois regularly in Canada concerning his investments. In order to keep his assets liquid, decedent's portfolio was divided between deposits in Canadian banks and stocks and bonds of Canadian corporations. Decedent returned yearly to actively manage his investments. Decedent met at least twice a year with Mr. Larouche at which time he personally made the decisions of when and where to invest his money. In fact, Mr. Larouche was prohibited from making changes in decedent's portfolio unless he received in person authorization. Moreover, we found all of petitioner's witnesses to be most credible and their testimony lends additional support to all of the other facts in the record which indicate that decedent was a Canadian domiciliary at the date of his death. Mrs. Paquette testified that her husband always intended to retain his Canadian domicile. Mr. Bourgois testified that the reason decedent sold his country home in Canada was because it was too large a home for decedent to maintain. [7] This testimony clearly indicates that decedent's sale *231 of his Canadian country home should not be regarded as evidence of his intent to abandon his Canadian domicile and establish a new domicile in the United States. After careful evaluation of all the evidence, including testimony by those who were well acquainted with decedent, we find that decedent never had any intention to establish a United States domicile. Decedent maintained many contacts with his native country, and followed a 25 year old practice of spending winters in Florida. We find that decedent never intended to remain in the United States indefinitely. The record supports the presumption of continuance of original domicile and overcomes the presumption of the correctness of respondent's deficiency. For all of the foregoing reasons, we hold that decedent was a nonresident of the United States at the time of his death under the estate tax statutes. *232 We now turn to respondent's final argument that the value of decedent's automobile, which was located in Florida at the time of his death, should have been included in decedent's gross estate.[8] Respondent raises this argument for the first time on brief, and, his doing so, has prejudiced petitioner as he obviously did not address this question at trial. It is well settled law that issues raised for the first time on brief will not be considered by this Court when to do so prevents the opposing party from presenting evidence that he might have if the issue had been timely raised. See Shelby U.S. Distributors v. Commissioner,71 T.C. 874, 885 (1979); Estate of Horvath v. Commissioner,59 T.C. 551, 555 (1973). Therefore, we will not pass upon the merits of respondent's untimely argument. *233 To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. Decedent's revocation of Declaration of Domicile and Citizenship provides as follows: This is to advise that I, EDOUARD H. PAQUETTE, pursuant to Chapter 222, Section 222.17, Florida Statutes, did on the 22nd day of March 1957 make a declaration of domicile and citizenship, said declaration being recorded on March 22, 1957 in Official Records Book 214, page 20, Public Records of Orange County, Florida, under the mistaken impression and with the intention of merely registering as a home owner in the County of Orange and State of Florida. That thereafter having read and considered said document and having consulted with legal counsel in regard to the effect and content of said declaration and being fully advised, I do, therefore, hereby revoke that said declaration above mentioned in full and do hereby declare that I am a citizen of the Country of Canada in the Province of Quebec; that my permanent home and domicile is at 2600 Catherine Road, Montreal, Quebec, Canada; that my intention in the past, present and future is to permanently maintain and continue my citizenship and domicile in such other County where I have my permanent abode even though I own and maintain a home at 1710 Lake Shore Drive, Orlando, Orange County, Florida; that I, EDOUARD H. PAQUETTE, am a bona fide resident and citizen of Canada as aforesaid and intend only to use my said Florida home as a winter residence; that any past, present or future acts done or performed by me are not to be construed as any indication or as evidencing any intention on my part to establish a domicile in the State of Florida; and that this declaration is made by me pursuant to Chapter 222, Section 222.17↩, Sub-Section 4, Florida 1 Statutes. [Emphasis added.]
2. On the date of his death, decedent had assets in Canada which were valued at $556,351.76, while the only assets located in the United States, other than his automobile, were the Florida house, two bank accounts, and personal belongings which had a total value of $88,125.13.↩
3. All section references are to the Internal Revenue Code of 1954, as amended.↩
4. See n. 1, supra.↩
5. Mr. Herve Beaudry, a Canadian citizen, friend, and neighbor of decedent testified that decedent visited him "three to five times" yearly from 1971 through 1975. [Tr. 88]↩
6. See n. 2, supra.↩
7. When asked why Mr. Paquette sold the house in 1971, Mr. Bourgois responded "well * * * the house was too big. They had the house and they had a guest house, too. And he had -- well, 90,000 feet of grass and trees is an awful lot of trouble. Since he was not getting any younger, it was too tiresome * * *."↩
8. Section 2103 generally provides that the gross estate of a nonresident decedent shall include property which at the time of his death is situated in the United States. In this context there is often an issue as to the proper situs of personal property, as "transient" property may not be considered to be "situated" in the United States for the purposes of that section. See Pulvermann v. Commissioner,30 T.C. 231 (1958); Delaney v. Murchie,177 F. 2d 444, 448↩ (1st Cir. 1949). While it was stipulated, in the instant case, that decedent's automobile, which was purchased, registered and insured in Canada, was physically located in Florida at the time of decedent's death, the record is ambiguous as to its proper situs.