

# THE ATTORNEY GENERAL
## OF TEXAS

December 31, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable Al Luna
Chairman
Science and Technology Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No.  JM-611

Re: Residence of persons who winter in Texas, for purposes of voting, operating a motor vehicle, certificates of title, and probate, inheritance tax and marital property laws

Dear Representative Luna:

You ask several questions concerning the legal status of persons who reside in Texas for a limited period of time each year and reside in another state the major part of the year. Your questions are prompted by concern over

> the ever increasing number of so called 'Winter Texans' who spend the winter season here in Texas but who continue to return to their home states each spring. . . . [W]hile they are in Texas many of these admittedly temporary visitors to our state register to vote and actually vote in our local elections. This, in spite of the fact that in most situations, these winter visitors will continue to accept the benefit of special real estate tax treatments afforded residents of their home state; will continue to maintain their automobile registration in their home state; will continue to use the driver's license issued by their home state; will maintain their registration to vote in their home state and will continue to pay income tax in their home state showing their residence as that state.

It is in this setting that you ask the following questions:

> 1.  Would a person who, for example, spends the winter in Texas, but continues to accept the benefits of residence in another state (special tax rates, registration to vote, special homestead exemptions, lower tuition or fees at another

state's facilities, etc.) and who intends to return to another state violate our laws when he or she registers to vote and/or votes?

2. Would a person who knows that another is not a resident of Texas (for reasons similar to those set out above) violate our laws by encouraging or assisting such nonresident to register and/or to vote?

3. Would a person who registers to vote in Texas establish a residence so as to be required to Title his or her motor vehicle in Texas; have it annually inspected; as well as be required to surrender his or her out-of-state driver's license as well as to take and pass the driver's license test in Texas?

4. Would a person who is registered to vote in Texas be subject to our probate and inheritance tax laws?

5. Would a person who registers to vote in Texas establish a residence so as to establish jurisdiction for the purposes of the application of our family and marital laws? In this regard, would our community property laws be applied to such person?

The term "residence" defies easy definition. The Texas Supreme Court advises that the term

is an elastic one and is extremely difficult to define. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile.

Mills v. Bartlett, 377 S.W.2d 636, 637 (Tex. 1964). The term takes its meaning in light of the object or purpose of the law in which it is employed. Switzerland General Insurance Co. v. Gulf Insurance Co., 213 S.W.2d 161 (Tex. Civ. App. - Dallas 1948, writ dism'd). Depending as it does on factual circumstances and individual intention, the question of residence is judicially determined. See Parker v. Brown, 425 S.W.2d 379, 381 (Tex. Civ. App. - Tyler 1968, no writ); Attorney

General Opinion JM-231 (1984). The factual circumstances you describe would be relevant for a court to consider in determining whether a person is a Texas resident for the purposes you inquire. They do not, however, reveal the present intention of the individual to become a Texas resident and, thus, cannot support categorical answers to your general inquiries. The single fact that a person registers to vote in this state does not in itself determine whether the person is a Texas resident for any of the purposes you inquire. The remainder of this opinion will explain why this is so. We note, however, that there is ordinarily a strong presumption that, if an individual registers to vote in Texas, he will be considered a resident for the other purposes about which you inquire.

You first ask whether a person who spends the winter in Texas but accepts the aforementioned benefits of residence elsewhere and who intends to return to another state violates Texas law by registering to vote and voting in Texas. Your second question is whether a person "who knows another person is not a resident of Texas" violates Texas law by encouraging or assisting the nonresident to register to vote and/or vote.

To be eligible to vote in Texas, a person must

> (1) be a qualified voter as defined by Section 11.002 [of the Election Code] on the day the person offers to vote;
>
> (2) be a resident of the territory covered by the election for the office or measure on which the person desires to vote; and
>
> (3) satisfy all other requirements for voting prescribed by law for the particular election.

Election Code §11.001. A qualified voter is a person who, among other requirements, is a resident of Texas and is a registered voter. Id. §11.002(5), (6). To be eligible to register to vote, a person must, inter alia, be a resident of the county in which the application is made. Id. §13.001(a)(5). Section 1.015 of the Election Code sets forth residency requirements for voting purposes:

> (a) In this code, 'residence' means domicile, that is, one's home and fixed place of habitation to which he intends to return after any temporary absence.
>
> (b) Residence shall be determined in accordance with the common-law rules, as enunciated by

the courts of this state, except as otherwise provided by this code.

(c) A person does not lose his residence by leaving his home to go to another place for temporary purposes only.

(d) A person does not acquire a residence in a place to which he has come for temporary purposes only and without the intention of making that place his home.

(e) A person who is an inmate in a penal institution or who is an involuntary inmate in a hospital or eleemosynary institution does not, while an inmate, acquire residence at the place where the institution is located. (Emphasis added).

Section 1.015 defines "residence" for voting purposes in terms of domicile. Though often used interchangeably, "residence" and "domicile" are not technically synonymous. Residence is considered a lesser-included element of domicile. Snyder v. Pitts, 241 S.W.2d 136, 139 (Tex. 1951). Residence requires a person to be living and physically present in a particular locality, but domicile additionally requires the person to live in the locality with the intention of making it his fixed and permanent home. Skubal v. Skubal, 584 S.W.2d 45 (Tex. Civ. App. - San Antonio 1979, writ dism'd). Thus, it is often said that a person may have as many residences as he or she chooses, but can have only one domicile. Switzerland General Insurance Co. v. Gulf Insurance Co., supra. The fact that one resides elsewhere is not sufficient to destroy the person's domicile as long as there is the requisite intent to retain that domicile. Los Angeles Airways, Inc. v. Lummis, 603 S.W.2d 246 (Tex. Civ. App. - Houston [14th Dist.] 1980), cert. denied, 455 U.S. 988 (1982). Domicile is lost, however, when the person removes himself with the intent not to return. See Commercial Standard Insurance Co. v. Nunn, 464 S.W.2d 415 (Tex. Civ. App. - Texarkana 1971, writ dism'd).

Subsection (b) of section 1.015 provides that residence is determined, except as otherwise provided in the Election Code, in accordance with the common law as announced by Texas courts. The courts advise that for voting purposes, the question of residence is answered by reference to actual facts and circumstances, including the intention of the person seeking to vote. Guerra v. Pena, 406 S.W.2d 769, 776 (Tex. Civ. App. - San Antonio 1966, no writ). The essential elements of a domicile are an actual residence and the intent to make it one's permanent home. See Texas v. Florida, 306 U.S. 398, 424 (1939); Snyder v. Pitts, 241 S.W.2d at 139. "Home" is defined to mean

a person's "true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Snyder v. Pitts, 241 S.W.2d at 139 (citations omitted). Subsections (c), (d), and (e) of section 1.015 make clear that domicile is neither affected nor determined by a person's temporary or involuntary presence in a particular locality or institution.

One court has held that a person who registered to vote in a particular county represented that it was his "current permanent residence address" under the Election Code. Mijares v. Paez, 534 S.W.2d 435 (Tex. Civ. App. - Amarillo 1976, no writ). Given the code's definition of "residence," it can be argued that a person who registers to vote thereby represents that the county is also his domicile. It is clear, however, that individual facts, circumstances, and intentions will determine whether such representations are true. The fact that a person who registers to vote in Texas intends to return to another state to reside for a portion of the year does not in itself reveal the person's intention to make that state his "home and fixed place of habitation." E.g., Every v. Supervisors of the Madison Checklist, 474 A.2d 1059 (N.H. 1984) (voter applicant domiciled in New Hampshire though maintaining residence in another state which had previously been his domicile). It is of no moment that the person pays income taxes to the other state, for states may tax income earned there by residents and nonresidents alike. See, e.g., Shaffer v. Carter, 252 U.S. 37, 49 (1920) (states may tax income of nonresidents earned in the taxing state). Also, states may not grant special tax advantages to residents of the state while denying the same benefits to nonresidents who own identical property or conduct the identical activity in the state and otherwise qualify for such treatment solely for the purpose of protecting local economies or shifting costs to nonresidents. See, e.g., Williams v. Vermont, 472 U.S. ___, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (such treatment violates equal protection clause of U.S. Constitution); Spencer v. South Carolina Tax Commission, 316 S.E.2d 386 (S.C. 1984), aff'd per curiam, 471 U.S. 82, 105 S.Ct. 1859, 85 L.Ed.2d 62 (1985) (denial of state income tax deduction to nonresidents but allowing deduction by state residents violates privileges and immunities clause of Fourth Amendment to U.S. Constitution). Thus, the fact that the person enjoys some special tax benefits in another state does not conclusively establish that the person is domiciled in that state. Finally, the fact that a person has voted outside the election district in which the application to vote is made is a relevant and important fact to be considered in determining the person's residence qualification, but it is not controlling. See Cramer v. Graham, 264 S.W.2d 135 (Tex. Civ. App. - San Antonio 1954, writ ref'd) (other facts and circumstances may be taken into account).

In short, while the circumstances you describe would be relevant for a court to consider in determining whether a person meets the

residence requirements of the Election Code, they do not support a categorical answer to your general inquiry.[1] Each case must be decided according to its own facts. See Mills v. Bartlett, supra. An Attorney General's Opinion cannot appropriately resolve such factual disputes. E.g., Attorney General Opinions JM-569 (1986); JM-394 (1985); M-849 (1971). Indeed, if we assume the stipulated facts of your first question, a court or jury could reasonably find that an individual did not intend to reside in Texas, and therefore, was not eligible to register to vote.

Assuming the stipulated facts are sufficient to persuade a court that a person registering to vote in Texas does not have the requisite intent to make his domicile in this state, the person would not violate the provisions of the Election Code merely by submitting an application to register to vote. However, a person, knowing he is ineligible to vote, does commit an offense if he votes or attempts to vote in an election in this state.

In your letter requesting this opinion, you quote article 15.43 of the Election Code of 1951, which decreed that any person who "shall swear falsely as to his own qualifications to vote" or as to the qualifications of another "shall be guilty of a felony of the third degree." With the exception of chapter 14, which was retained, the Election Code of 1951 was repealed in its entirety and recodified in 1985. See Acts 1985, 69th Leg., ch. 211, §9, at 802, 1076. Article 15.43 was not included in the recodification, although other provisions pertaining to illegal voting were recodified. See Elec. Code §§64.011; 64.012; 276.003 (replacing 1951 Election Code arts. 15.41, 15.45, 15.48, 15.50, 15.52, 15.61). The omission of previous laws from a code has the general effect of repealing the omitted provisions. 1A Singer, Sutherland Statutory Construction §28.08 (rev. 1985) (citing American Indemnity Co. v. City of Austin, 246 S.W. 1019 (Tex. 1922)). See also Macedonia Baptist Church v. Farm & Home Savings & Loan Ass'n., 110 S.W.2d 1013 (Tex. Civ. App. - Dallas 1937, writ dism'd) (omission of statutes from 1925 codification of civil statutes repealed such statutes). However, where a valid and operative provision is omitted through oversight, it may be held to continue in effect. 1A Singer, Sutherland Statutory Construction §28.08 (rev. 1985). The manner in which the legislature recodified the provisions of the 1951 code concerning illegal voting, i.e., by combining several of the old provisions into a fewer number of new sections, convinces

---

1. In a brief submitted in connection with this opinion, the Secretary of State suggests that seizing upon particular criteria to determine residence, e.g., the ownership of property in another state, would violate Texas law and would require the state to submit such practice to the Justice Department for preclearance pursuant to section 5 of the Voting Rights Act, 42 U.S.C. §1973c.

us that the·omission of former article 15.43 from the new Election Code was not an oversight. It is apparent, then, that a person unqualified to vote does not commit an offense under the Election Code merely by registering to vote in Texas. A person unqualified to vote does, however, commit an offense if the person "votes or attempts to vote in an election in which the person knows he is not eligible to vote." Elec. Code §64.012(a)(1). Also, an election officer who knowingly "permits an ineligible voter to vote without having been challenged" commits an offense under the code. Elec. Code §63.012(a)(1).

This conclusion should not suggest that a person who submits false information on a voter registration application will escape punishment altogether. Section 37.10(a) of the Penal Code provides that a person commits an offense if he

> (1) knowingly makes a false entry in, or false alteration of, a governmental record;
>
> (2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record; or
>
> (3) intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record. (Emphasis added).

"Governmental record" is defined to mean anything

> (A) belonging to, received by, or kept by government for information; or
>
> (B) required by law to be kept by others for information of government.

Penal Code §37.01(1). In our opinion, the definition of governmental record is broad enough to include a voter registration application. Cf. V.T.C.S. art. 6252-17a, §2(2) (definition of "public records"). Accordingly, we believe that a person who knowingly makes a false entry on a voter registration application commits an offense under section 37.10 of the Penal Code.

A person who "swears falsely" as to the qualifications of another person to vote does not commit an offense under the new Election Code. Both article 15.44 of the 1951 code, which made it unlawful for a person to "knowingly and intentionally induce[] or attempt[] to induce another to swear falsely" as to his qualifications to vote, and

article 15.42, which made it illegal to "procure, aid, or advise another to . . . vote at any election, knowing that the person is not qualified to vote," were omitted from the new Election Code. Section 13.007 of the 1985 code, however, provides that a person commits an offense if he "requests, commands, or attempts to induce another person to make a false statement on a [voter] registration application." Thus, despite this considerable revision of former election law provisions, your second question can be answered in the affirmative, provided the person is encouraging a person unqualified to vote to make a false statement on a voter registration application.

As a final note, the secretary of state advises that the exclusive procedure for challenging a voter applicant's qualifications is provided in sections 13.074 to 13.080 of the Election Code. Sec'y of State Election Law Opinion JWF-15 (1983). The secretary has also promulgated a rule prohibiting the use of any additional questionnaire or the requirement of additional written information from a voter applicant who has properly completed a registration form. 1 T.A.C. §81.45 (1978).

Your third inquiry concerns whether a person who registers to vote in Texas establishes a residence in this state such that the person is required to obtain a certificate of title from the Department of Public Safety for his or her motor vehicle as well as have the motor vehicle annually inspected in this state. You also ask whether under these circumstances the person must surrender his or her out-of-state driver's license and pass the driver examination in this state.

The Certificate of Title Act was enacted for the purpose of reducing and preventing, inter alia, the theft of motor vehicles, the importation and trafficking of stolen vehicles in this state, and the sale of encumbered motor vehicles without the required disclosure to the purchaser of any liens for which the vehicle stands as security. V.T.C.S. art. 6687-1, §1. Section 27 of article 6687-1 requires a person seeking to sell or dispose of "any motor vehicle required to be registered or licensed in this State" to apply for a certificate of title for such vehicle. Section 30 of the act sets forth various documentary requirements for vehicles brought into this state which were last registered and/or titled in another state or country and for vehicles not manufactured for sale in the United States. Subsection (a) of section 30 also requires the owner of each such vehicle to have the vehicle inspected for compliance with safety standards before the vehicle may be registered or titled in this state. See also V.T.C.S. art. 6701d, §142A; Attorney General Opinion JM-127 (1980). Subsection (b) of section 30 requires a person, other than a dealer or importer, who brings into Texas a motor vehicle "which is required to be registered or licensed within this State" to apply for a certificate of title prior to selling, transferring, or encumbering such vehicle. Art. 6687-1, §30(b). Section 51 makes unlawful any sale, offer for

sale, or offer as security of any motor vehicle without the seller "then and there" having in his possession a proper receipt or certificate of title covering the vehicle. Sales made in violation of the act are void. Art. 6687-1, §53.

The Certificate of Title Act plainly requires every person who seeks to sell, transfer, or encumber any motor vehicle in this state to obtain a certificate of title prior to any such transaction, regardless of whether the person is a Texas resident. V.T.C.S. art. 6687-1, §§27, 30. The provisions of the act are triggered by the occurrence of any of the listed transactions and not upon the residency of the owner of a motor vehicle. The significance of finding that a person is a resident of this state is in determining the place in which the application for a certificate of title is made. A Texas resident must make application in the county of his domicile or in the county in which the motor vehicle is purchased or encumbered. Id. §27. A person who brings into Texas a motor vehicle registered or titled elsewhere must make application in the county in which the transaction occurs. Id. §30(b). Although section 30 does not so specify, it is apparent that it was intended to apply primarily to persons who have no Texas domicile. Compare id. §27. Consequently, the fact that a person has registered to vote in Texas is inapposite to the question of whether the person must obtain a certificate of title for any motor vehicle the person owns.

The question of residency will, however, have a bearing on whether a person must register his motor vehicle in Texas.

Article 6675a-2, V.T.C.S., requires every owner of a motor vehicle "used or to be used upon the public highways of this State" to register each such vehicle with the Department of Highways and Public Transportation. Application is made in the county in which the owner resides. Id. Article 6675a-6e, section 2, V.T.C.S., permits any nonresident owner of a motor vehicle to "make an occasional trip into this State" in such vehicle without having to register the vehicle in Texas. A nonresident is defined as

> every resident of a State or Country other than the State of Texas whose sojourn in this State is as a visitor and does not engage in gainful employment or enter into business or an occupation, except as may be otherwise provided in any reciprocal agreement with any other State or Country.

Art. 6675a-6e, §1. Vehicles subject to license by the state but which are not authorized to travel on Texas roads for lack of registration or reciprocity with the state in which it is registered may be temporarily registered by the department. Id. §3. The Department of

Highways and Public transportation is authorized to enter into reciprocal agreements with duly authorized officials of other states and countries to provide for the registration of motor vehicles by Texas residents and nonresidents. V.T.C.S. art. 6675a-16(a).

The Uniform Act Regulating Traffic on Highways requires every motor vehicle registered in this state to undergo an annual inspection for compliance with uniform safety standards. V.T.C.S. art. 6701d, §140(a), (c). A vehicle must also be inspected before it may be registered in this state or a certificate of title may be issued to its owner. Id. §142A(a). See also Attorney General Opinion MW-127 (1980). A person who operates a vehicle on Texas highways in violation of these requirements or without displaying a valid inspection certificate is guilty of a misdemeanor. Id. §140(g). If, however, the vehicle is licensed in another state and is temporarily and legally operated under a valid reciprocity agreement with Texas, the owner commits no offense by operating the vehicle without obtaining an inspection certificate in this state. Id. Further, the Texas Department of Public Safety may recognize a valid inspection certificate issued by another state which has an inspection law similar to Texas. Id. §140(d). See also Attorney General Opinion MW-127 (1980). The inspection requirement thus hinges on whether the vehicle must be registered in this state or on whether the owner desires or is required to obtain a certificate of title for the vehicle.

Article 6687b, section 2(a), V.T.C.S., prohibits any person from driving upon the highways of this state without a valid Texas driver's license unless the person is expressly exempted by the act. Section 10(a) of article 6687b requires every applicant for a Texas driver's license to be examined by a test of the applicant's vision, ability to understand highway traffic signs in the English language, knowledge of the traffic laws, ability to exercise "ordinary and reasonable control in the operation of a motor vehicle," and such other examination that the Department of Public Safety finds necessary to determine the applicant's fitness to operate a motor vehicle. Subsection (6) of section 4 forbids the issuance of a driver's license to any person required to take an examination unless the person has successfully passed such examination. Section 10(b) authorizes the department to promulgate a rule allowing a person holding a valid driver's license issued by another state to receive a Texas driver's license upon passing only the vision examination required by section 10(a) and paying the required fees.

Article 6687b provides a number of exemptions from the licensing requirements of the act. See id. §3. The act exempts persons holding valid driver's licenses issued by other states only if these persons are not Texas residents. See id. §3(d), (e), (f). Section 3A extends a new resident of Texas who has in his immediate possession a valid driver's license issued by the state or country of previous residence

the privilege of operating a motor vehicle in this state without a Texas driver's license for a period of 30 days after entering the state. For the purpose of licensing drivers, the Department of Public Safety defines "resident" to mean every person whose domicile is in the state of Texas. 37 T.A.C. §15.1(2) (1985). All persons who do not fall within the scope of the definition are classified as non-residents. Id. §15.1(3). Applicants for a Texas driver's license must surrender to the department all valid driver's licenses in their possession issued by any state. V.T.C.S. art. 6687b, §2(b).

Taking each of these provisions into account, it is evident that the legislature intended all Texas residents to obtain a valid driver's license issued by the state prior to operating a motor vehicle on the highways of the state. However, because the term "resident" has been defined for purposes of drivers' licenses to include the concept of domicile, mere presence in this state is insufficient to require a person to obtain a Texas driver's license and to undergo the driver's examination of this state. The question of whether a person must satisfy these requirements, then, depends on the same factors that determine whether the person is qualified to vote in this state. As we have already concluded, the fact that the person registers to vote does not in itself answer this inquiry.

You also ask whether a person who is registered to vote in Texas is subject to this state's probate and inheritance tax laws.

The jurisdiction of Texas courts over probate matters is described in sections 5 and 5A of the Probate Code. However, while these courts have subject matter jurisdiction to review any probate matter brought before them, they may lack venue under the Probate Code and, thus, may not admit the decedent's will to probate or grant letters testamentary or of administration. See, e.g., Matter of Estate of Izer, 693 S.W.2d 481 (Tex. App. - Corpus Christi 1985, no writ). Section 6 of the Probate Code provides rules for determining venue in probate proceedings:

> Wills shall be admitted to probate, and letters testamentary or of administration shall be granted:
>
> (a) In the county where the deceased resided, if he had a domicile or fixed place of residence in this State.
>
> (b) If the deceased had no domicile or fixed place of residence in this State but died in this State, then either in the county where his principal property was at the time of his death, or in the county where he died.

(c) If he had no domicile or fixed place of residence in this State, and died outside the limits of this State, then in any county in this State where his nearest of kin reside.

(d) But if he had no kindred in this State, then in the county where his principal estate was situated at the time of his death.

(e) In the county where the applicant resides, when administration is for the purpose only of receiving funds or money due to a deceased person or his estate from any governmental source or agency; provided, that unless the mother or father or spouse or adult child of the deceased is applicant, citation shall be served personally on the living parents and spouses and adult children, if any, of the deceased person, or upon those who are alive and whose addresses are known to the applicant.

Texas courts are without jurisdiction to probate the wills of deceased persons with no domicile or fixed place of residence in Texas who die outside the state and have no property or next of kin in the state. Diehl v. United States, 438 F.2d 705, 709 (5th Cir. 1971), cert. denied, 404 U.S. 830 (1971). Aside from this qualification, there appears to be no other limitation on the authority of a Texas court to admit wills to probate or grant letters testamentary or of administration.

Clearly, the will of a deceased person who was registered to vote in Texas may be admitted to probate in this state if the person was domiciled in Texas at the time of his death. If the person was not domiciled in the state at the time of his death, his will may still be admitted to probate in Texas, provided any of the other qualifications listed in section 6 of the code are met. This answer, however, should not imply that Texas probate laws are entirely applicable to the estates of deceased persons whose wills are admitted to probate in Texas.

Texas courts follow the general rule that the effect and construction of a will is determined by the law of the testator's domicile to the extent it relates to personal property and by the law of the state in which the property is located insofar as it concerns real property. Crossland v. Dunham, 140 S.W.2d 1095 (Tex. 1940); Van Hoose v. Moore, 441 S.W.2d 597 (Tex. Civ. App. - Amarillo 1969, writ ref'd n.r.e.). Each case must be examined in light of its own facts. Again, the fact that a person registers to vote in Texas is

insufficient to determine the extent to which Texas law will control the disposition and administration of the person's estate.

The same can be said with respect to the applicability of Texas inheritance tax laws, although here, too, domicile is a relevant consideration.

Chapter 211 of the Tax Code establishes the criteria for determining the amount of tax due the state on the transfer of a deceased person's property. The code defines "resident" as "a decedent who was domiciled in Texas on his date of death." Tax Code §211.001(13). A nonresident decedent is a deceased person who was a citizen of the United States and was not domiciled in Texas at the time of his death. Id. §211.001(11). Property whose transfer is subject to the state inheritance tax at the death of a Texas resident includes

> real property having an actual situs in this state whether or not held in trust; tangible personal property having an actual situs in this state; and all intangible personal property, wherever the notes, bonds, stock certificates, or other evidence, if any, of the intangible personal property may be physically located or wherever the banks or other debtors of the decedent may be located or domiciled; except that real property in a personal trust is not taxed if the real property has an actual situs outside this state.

Id. §211.051(c). Property of a nonresident decedent, the transfer of which becomes subject to inheritance taxes in this state includes

> real property having an actual situs in this state whether or not held in trust and tangible personal property having an actual situs in this state, but intangibles that have acquired an actual situs in this state are not taxable.

Id. §211.052(c). The application of Texas inheritance tax laws is predicated, for the most part, on the existence of estate assets having an actual situs in Texas. The domicile of the decedent is significant insofar as it determines the extent to which the transfer of the decedent's intangible personal property is subject to this state's inheritance tax. See generally Curry v. McCanless, 307 U.S. 357, 365-366 (1939).

In deciding the question of residence for inheritance tax purposes, a court would take into account the circumstances you

describe; however, the single fact that a person registers to vote in Texas does not resolve this inquiry.[2]

It should be noted that finding a decedent was domiciled in Texas at the time of his death for inheritance tax purposes does not preclude another state from concluding the decedent was domiciled in that state for purposes of its inheritance tax. See, e.g., Texas v. Florida, 306 U.S. 398 (1939). The primary constitutional restraint on such multiple taxation arises when the total of the taxes charged by the competing states exceeds the value of the entire estate. See Massachusetts v. Missouri, 308 U.S. 1 (1939). In the event multiple state claims of domicile are made, the comptroller of public accounts is authorized to enter into a written compromise agreement on domicile with the taxing authority of the other state and the personal representative of the decedent's estate. Tax Code §211.109(a).

Your fifth question is whether a person who registers to vote in Texas establishes a residence for the purposes of Texas family and marital property laws.

Section 4.01 of the Family Code specifically provides that the "law of this state applies to persons married elsewhere who are domiciled in this state." Section 3.21 of the Family Code, however, establishes residency qualifications which determine whether a person may maintain a suit for divorce in Texas courts:

> No suit for divorce may be maintained unless at the time the suit is filed the petitioner or the respondent has been a domiciliary of this state for the preceding six-month period and a resident of the county in which the suit is filed for the preceding ninety-day period.

A nonresident may sue for divorce in a Texas court if the respondent has been domiciled in Texas for at least the last six months prior to

---

2. Compare Estate of Paquette, T.C. Memo. 1983-571, 46 T.C.M. (CCH) 1400 (1983) (decedent held to be nonresident of U.S. at time of death for federal estate tax purposes despite fact that he owned a home in Florida and wintered there for 25 years; decedent's numerous contacts with Canada, where he filed income tax returns, maintained valid Canadian driver's license and passport, voted, and purchased, registered and insured his automobile supported court's finding that decedent was domiciled in Canada; court also considered decedent's formal declaration of Canadian domicile and fact that the bulk of his assets were situated in Canada).

the time the suit is filed. Fam. Code §3.24. Thus, the mere fact that a person is registered to vote in Texas does not in itself determine whether that person may sue or be sued for divorce in this state, since the Election Code does not require a person to be domiciled in Texas for a particular period of time prior to becoming eligible to vote. Assuming that a suit for divorce may properly be maintained, property in the possession of either spouse during or on dissolution of the marriage is presumed to be community property and is subject to division in a manner that the court deems "just and right." Fam. Code §§3.63; 5.02.

## S U M M A R Y

A person who knowingly makes a false entry on a voter registration application commits an offense under section 37.10 of the Penal Code. A person who is unqualified to vote commits an offense by voting or attempting to vote in an election in which the person knows he is ineligible to vote. Elec. Code §64.012(a)(1). A person who requests, commands, or attempts to induce a person unqualified to vote to make a false statement on a voter registration application commits an offense under section 13.007 of the Election Code. Whether persons who spend the winter in Texas but accept the benefits of residence in other states and intend to return to those states are residents of Texas for voting purposes must be determined on a case-by-case basis. Sections 13.074 to 13.080 of the Election Code provide the exclusive procedure for challenging a voter applicant's qualifications.

The Certificate of Title Act, article 6687-1, V.T.C.S., requires every person who seeks to sell, transfer, or encumber any motor vehicle in this state to obtain a certificate of title and to have the vehicle inspected for compliance with safety standards prior to any such transaction, regardless of whether the owner is a Texas resident or a non-resident. Article 6701d, V.T.C.S., additionally requires every motor vehicle registered in this state to undergo an annual safety inspection. All Texas residents who operate motor vehicles on Texas highways are required to obtain a valid Texas driver's license. V.T.C.S. art. 6687b. The single fact that a person registers to vote in Texas does not determine whether the person must satisfy any of these requirements.

p. 2746

The fact that a person registers to vote in Texas does not reveal whether the person is subject of Texas probate, inheritance tax, family and marital property laws, or to what extent such laws may be applicable.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General